IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                                                    CRIMINAL ACTION NO. 3:25-00096

MARCUS ALLEN JOHNSON
    also known as "Mook"

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Government's Motion to Set Aside Plea Agreement of Defendant Marcus Allen Johnson. ECF No. 39. The Government alleges Mr. Johnson breached his plea agreement by failing to cooperate. Mr. Johnson opposes the motion. The Court held a hearing on the motion on January 6, 2026. Based upon the testimony and evidence contained in the record, the Court **GRANTS** the motion.

**I. FACTS**

On May 20, 2025, a federal grand jury sitting in the Southern District of West Virginia returned a two-count indictment against Mr. Johnson for distribution of fentanyl, a controlled substance, on or about January 14, 2025, and January 28, 2025, in violation of 21 U.S.C. § 841(a)(1). *Indictment* 1–2, ECF No. 1. On August 25, 2025, Mr. Johnson pled guilty to Count One of the Indictment pursuant to a written plea agreement. *Written Plea of Guilty,* ECF No. 29; *Plea Agreement*, ECF No. 30. In exchange for Mr. Johnson's guilty plea, the Government agreed to move the Court to dismiss Count Two of the Indictment following final disposition. *Plea Agreement* ¶ 2. As part of the plea agreement, Mr. Johnson agreed to be "forthright and truthful with . . . [the United States Attorney's Office] and other law enforcement agencies with regard to

all inquiries made pursuant to this agreement, and . . . give signed, sworn statements and grand jury and trial testimony upon request of the United States." *Plea Agreement* ¶ 6.

At his plea hearing, defense counsel summarized the plea agreement, including the defendant's obligation to cooperate in providing information to the Government upon request. *Guilty Plea Tr.* 6:16-20, ECF No. 38, at 6. Mr. Johnson affirmed to the Court that he understood the agreement and the requirements set forth within it. *Id.* at 8:23–25. The Court found his plea was voluntary and accepted his guilty plea. *Id.* at 25:9–25. As is standard, the Court deferred acceptance of the plea agreement pending review of the pre-sentence report. *Id.* at 25:22–24.

Following his plea, but prior to his sentencing hearing, the Government filed its Motion to Set Aside Plea Agreement, ECF No. 39, reasoning that the defendant, through counsel, indicated that he was unwilling to provide information on other individuals and would only respond to questions surrounding his own conduct. *Gov't Mot. to Set Aside Plea Agreement* 2. Mr. Johnson objected to the motion, claiming it was premature given a debriefing was never attempted. *Def.'s Obj. to Gov't Mot. to Set Aside Plea Agreement* 1, ECF No. 40. The Court held the motion in abeyance and provided the parties an opportunity to confer. *Order*, ECF No. 41.

Mr. Johnson was debriefed on October 30, 2025, and November 20, 2025. According to the Government, at the initial debriefing, Mr. Johnson first claimed there was no source of the fentanyl, but at the same debriefing, later indicated that the fentanyl originated from a co-defendant in his 2021 criminal case that was charged in this Court, Case No. 3:21-cr-00109. *Suppl. Status Update to Gov't Mot. to Set Aside Plea Agreement* 2, ECF No. 46. He claimed that, prior to going to prison in 2021, he rented a storage unit at IncaAztec Self Storage for his clothes under the fake name of "Mark Jones." *Id.* Next, he claimed that when he was released from prison in 2023, he retrieved his clothing from the storage unit and discovered around 20 grams of fentanyl in his

clothing pockets. *Id.* He explained that when he found the fentanyl in 2023, he "threw it" outside until retrieving it almost two years later to distribute it to the confidential informant in January of 2025. *Id.*

At the second debriefing, Mr. Johnson made the same claims related to finding the fentanyl in the storage unit he rented under a fake name and keeping the fentanyl outside until the distribution in 2025. *Id.* 3. Contradicting his first interview, he denied that he received the fentanyl from a co-defendant in his prior criminal case, instead claiming that he bought the fentanyl from "the black market, the dark web." *Id.* When asked why he previously indicated his past co-defendant was the source, he claimed he was groggy because he had been sleeping just before the first debriefing. *Id.*

At the January 5, 2026, evidentiary hearing, Detective Jared Cremeans of the Cabell County Sheriff's Office testified that he was present at both debriefings lasting over a cumulative 180 minutes. Detective Cremeans substantiated the statements within the Government's motion and testified that while Mr. Johnson did not refuse to answer questions, he provided vague and implausible answers at times. In particular, Mr. Johnson gave contradictory statements surrounding the origin of the fentanyl relevant to the present charges. Additionally, at the evidentiary hearing, the parties stipulated that the storage locker facility's records, maintained over the relevant period, produced no rental under Mr. Johnson's real name nor his stated alias during the years in question.[1]

---

[1] During the evidentiary hearing, the Parties stipulated the storage facility records confirmed a unit was rented under the name of Marcus Johnson from December 2023 to July of 2024. *Suppl. Status Update to Gov't Mot. to Set Aside Plea Agreement* 1–2. That was not the relevant period that Mr. Johnson claimed to have stored his clothes holding fentanyl within a storage unit at that facility.

## II. LEGAL STANDARD

Plea agreements are interpreted under the principles of contract law. *U.S. v. Dawson*, 587 F.3d 640, 645 (4th Cir. 2009). A material breach occurs when the non-breaching party is not afforded the reasonable expectation of its negotiation. *United States v. Scruggs*, 356 F.3d 539, 543–44 (4th Cir. 2004), *cert. denied,* 541 U.S. 1079 (2004). The benefit the government reasonably expects to receive from a plea agreement, affecting the essence of the contract, is an objective inquiry. *Id.* To set aside a plea agreement, the party asserting the breach has the burden of proving a material breach of the plea agreement by a preponderance of the evidence. *See United States v. Snow*, 234 F.3d 187, 189 (4th Cir. 2000). Once a material breach is established, the other party is relieved of its obligation. *United States v. West,* 2 F.3d 66, 70 (4th Cir. 1993). A defendant's breach of the plea agreement does not provide an absolute right to withdraw a guilty plea. *United States v. Huang*, 178 F.3d 184, 189 (3rd Cir. 1999) (noting that allowing a defendant to withdraw from a guilty plea would reward the defendant for his breach and "turn the entire sentencing process in the nation into chaos").

## III. DISCUSSION

The Court finds the Government has clearly met its burden to prove a material breach of the plea agreement by the preponderance of the evidence. The agreement centered a plea of guilty to a count of fentanyl distribution in violation of 21 U.S.C. § 841(a)(1) in exchange for the Government's motion for dismissal of the remaining count in the Indictment. As previously indicated, the plea agreement signed by the defendant included a cooperation provision, requiring that he be forthright and truthful as to inquiries made surrounding the plea agreement by the United States Attorney's Office and other law enforcement agencies upon request.

Mr. Johnson provided inconsistent and contradictory statements surrounding the source of the distributed fentanyl by claiming the fentanyl came from a past co-defendant and later claiming that he had purchased it off the dark web or black market. While Mr. Johnson indicated the stated origin of the fentanyl was "admittedly inconsistent," he claimed it did not equate to lying or a lack of cooperation. *Def.'s Resp. to Gov't Status Update* 6, ECF No. 47. Both stated origins of the fentanyl cannot be true, and it is even plausible that neither are true.

Law enforcement commonly rely on cooperative, pleading defendants to provide the source of drugs underlying convictions to inform investigations into other crimes. The origin of the fentanyl underlying the charge was information that the Government reasonably expected to receive within the purview of the agreement and Mr. Johnson's failure to provide it constituted a material breach. As noted in the Fourth Circuit Court of Appeals decision in *Scruggs*, "the United States bargained for complete and truthful cooperation so that it could make its decisions in perspective of that truthful and complete cooperation, and what it was deprived of was the right and the benefit to do precisely that." *Scruggs*, 356 F.3d at 544.

While not necessarily material, other implausible explanations provided by the defendant underscore the falsity of his claimed sources of fentanyl: discovering the fentanyl in his clothes at the storage facility with records which contradict his alleged rental of a unit; keeping the fentanyl outside at an unidentified location; and retrieving it roughly two years later to then distribute it as alleged in the Indictment. The purpose of a plea agreement would be undermined by failing to consider the defendant's conduct here to be a material breach.

The Court finds Mr. Johnson has breached the terms of his plea agreement and has relieved the Government of its duty to act in accordance with that agreement.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** the Government's Motion to Set Aside Plea Agreement. ECF No. 39. The Court **DEFERS** sentencing as to Count One pending disposition of Count Two. The Court will enter a separate order setting trial and related deadlines as to Count Two.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER:	January 12, 2026

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE